**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RUPERT J. ORTEGA,

        Plaintiff,

v.                                                                                                   No. CV 20-1245 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Rupert J. Ortega's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 27), (the "Motion"), filed July 12, 2021; Defendant Commissioner Kilolo Kijakazi's *Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 32), filed October 12, 2021; and Mr. Ortega's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing* (the "Reply"), (Doc. 33), filed October 27, 2021.

Mr. Ortega applied for disability insurance benefits on March 24, 2014, alleging disability beginning March 25, 2012. (Administrative Record "AR" 67). In his application, Mr. Ortega claimed he was limited in his ability to work due to arthritis, carpel tunnel syndrome, "bone contact[ing] with other bone in wrist," absence of cartilage in the "mid right knuckle," damaged feet from "constant beating on concrete," lower back pain from "heavy lifting [and a] boat crash," headaches and head pain from a "boat crash," and a

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

torn meniscus causing right knee pain from a "motorcycle crash." (AR 68). Mr. Ortega's application was denied initially on January 13, 2015, (AR 68-77), and upon reconsideration on October 8, 2015, (AR 78-94). Mr. Ortega requested a hearing before an Administrative Law Judge ("ALJ"), (AR 107-108), which was held on June 13, 2017, before ALJ Lillian Richter, (AR 13).

At the hearing, Mr. Ortega appeared before ALJ Richter with his attorney Michael Armstrong, and with impartial vocational expert ("VE") Sandra Trost. (AR 13). ALJ Richter issued her decision on December 8, 2017, finding Mr. Ortega not disabled at any time between his alleged disability onset date through the date of ALJ Richter's decision. (AR 29). Mr. Ortega then requested review of ALJ Richter's decision before the Appeals Council, which was denied on September 24, 2018. (AR 1-6).

In November 2018, Mr. Ortega filed a complaint in the United States District Court for the District of New Mexico, challenging ALJ Richter's decision. *See Ortega v. Saul*, 1:18-cv-1092 KK. At that time, Mr. Ortega argued, in relevant part, that ALJ Richter had improperly discounted the opinion of Murari Bijpuria, M.D., a non-examining state agency physician, that Mr. Ortega was limited to only occasional handling. *Id.* at (Doc. 16 at 12-16). United States Magistrate Judge Kirtan Khalsa agreed with Mr. Ortega that ALJ Richter's reasons for discounting Dr. Bijpuria's opinion were not supported by substantial evidence. *Id.* at (Doc. 23 at 8). Judge Khalsa found, in particular, that ALJ Richter had failed to adequately explain why she discounted certain evidence in the record that supported a limitation to occasional handling while crediting other purportedly inconsistent evidence. *Id.* at (Doc. 23 at 12-19). Judge Khalsa reversed ALJ Richter's decision and remanded the matter. *Id.* at (Doc. 23 at 19).

2

On August 20, 2020, upon remand, ALJ Richter held a second hearing at which Mr. Ortega appeared by telephone, due to the COVID-19 pandemic, with his attorney Laura J. Johnson, and with VE Leslie J. White. (AR 450). ALJ Richter issued her decision on October 22, 2020, finding Mr. Ortega not disabled at any time between his alleged disability onset date, March 25, 2021, through his date last insured, December 31, 2017. (AR 450-466). Pursuant to 20 C.F.R. § 404.984, ALJ Richter's decision is the final decision of the Commissioner.

Mr. Ortega now challenges ALJ Richter's October 22, 2020 decision denying his claim for disability insurance benefits. *See* (Doc. 1); (Doc. 27). In his Motion, Mr. Ortega contends ALJ Richter committed two errors: (1) she failed to properly "evaluate and incorporate" Dr. Bijpuria's opinion, as instructed by Judge Khalsa, and instead "cop[ied] and pasted much of the language from her prior decision into the current decision[;]" and (2) she failed to conduct a function-by-function assessment of Mr. Ortega's work-related abilities before determining that he could perform a limited range of light work with frequent handling, fingering, and feeling bilaterally. (Doc. 27 at 9-19). Additionally, Mr. Ortega alleges that the hearing transcript is incomplete, due to the "twenty-eight [] instances during which portions of both questions and responses were indicated as '(INAUDIBLE)[,]'" preventing judicial review. *Id.* at 19-21.

The Court has reviewed the parties' briefing and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Richter failed to properly assess Dr. Bijpuria's opinion, the Court finds Mr. Ortega's Motion is well-taken and should be **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An

4

ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1)

they are not engaged in "substantial gainful activity"; (2) they have a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) their impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) they are unable to perform their "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *see also Grogan*, 399 at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

In his application, Mr. Ortega claimed he was limited in his ability to work due to arthritis, carpel tunnel syndrome, "bone contact[ing] with other bone in wrist," absence of cartilage in the "mid right knuckle," damaged feet from "constant beating on concrete," lower back pain from "heavy lifting [and a] boat crash," headaches and head pain from a "boat crash," and a torn meniscus causing right knee pain from a "motorcycle crash." (AR 68). At step one, ALJ Richter determined Mr. Ortega did not engage in substantial gainful activity between March 25, 2012, the alleged disability onset date, and December 31, 2017, the date last insured. (AR 452). At step two, ALJ Richter found Mr. Ortega had the severe impairments of mononeuritis carpal tunnel syndrome, right plantar fasciitis, bilateral heel spurs, status post right knee meniscus repair, mild osteoarthritis of the right wrist and hand, unspecified bipolar disorder,

6

attention-deficit hyperactivity disorder ("ADHD"), major depressive disorder, and anxiety. (AR 452).

At step three, ALJ Richter determined Mr. Ortega's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 25). ALJ Richter then found Mr. Ortega had the RFC to perform light work with the following limitations:

> [C]an frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can never crawl; can occasionally balance, stoop, kneel, and crouch; [] can frequently handle, finger, and feel bilaterally[;] . . . can perform simple, routine work; can have occasional interaction with supervisors and coworkers and incidental interaction with members of the public; can understand and communicate simple information; [and] can make simple, work-related decisions in a workplace with few changes in the routine work setting.

(AR 455).

In formulating Mr. Ortega's RFC, ALJ Richter stated she considered his symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529, and Social Security Ruling ("SSR") 16-3p. (AR 455). ALJ Richter stated she also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1527. (AR 455). She concluded that while some of Mr. Ortega's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Ortega described were not entirely consistent with the evidence in the record. (AR 457).

ALJ Richter considered opinion evidence from ten sources. She assigned "some weight" to the opinion of state agency physician Ronald Davis, M.D., that Mr. Ortega could perform light work with occasional stooping and crouching. (AR 460). She found

7

the opinion of Dr. Bijpuria that Mr. Ortega is limited to occasional gross manipulation with the right upper extremity to be entitled to "only some weight . . . because it is internally inconsistent and not supported by treatment notes." (AR 460). ALJ Richter afforded "some weight" to the opinion of state agency psychiatrist C.W. Wang, M.D., regarding Mr. Ortega's ability to perform simple tasks, and she afforded "some weight" to the opinion of state agency physician David Coffman, M.D., regarding Mr. Ortega's ability to climb, kneel, crouch, and crawl. (AR 460). ALJ Richter declined to evaluate or assign weight to state agency psychiatrist Mark McGaughey, Ph.D., and state agency physician Mark Werner, M.D., because they "both report[ed] that there is insufficient evidence available to offer an opinion in this matter." (AR 460).

ALJ Richter assigned "minimal weight" to the opinion of "treating non-medical source" Julia Eddy, LMSW, that Mr. Ortega suffers from anxiety and ADHD. (AR 461). ALJ Richter assigned "significant weight" to the opinion of examining psychologist Mary Loescher, Ph.D., that Mr. Ortega can understand, remember, and follow through on basic work instructions, that he was limited in his ability to follow through on more complex work instructions, and that his ability to function in a work setting would depend on the management of his mood disorder. (AR 462); *see also* (AR 294).

Finally, ALJ Richter gave "little weight" to the opinions of examining psychologist Steven Baum, Ph.D., and Claudia Cruz, DNP, regarding Mr. Ortega's limitations in the areas of understanding, remembering, or applying information; concentration, persistence, or maintaining pace; and interacting with others. (AR 462-463); see also (AR 446, 1155). She gave "only some weight" to the third-party statements by Mr. Ortega's wife. (AR 463).

At step four, ALJ Richter found Mr. Ortega unable to perform his past relevant work as an auto mechanic through the date last insured. (AR 464). ALJ Richter proceeded to step five, finding Mr. Ortega to be "an individual closely approaching advanced age[] on the date last insured" who has at least a high school education.[2] (AR 464). ALJ Richter found, given VE White's testimony and Mr. Ortega's age, education, work experience, and assessed RFC, that Mr. Ortega could perform other work as a cleaner-housekeeping, collator operator, or routing clerk. (AR 465). After finding Mr. Ortega able to perform other work existing in significant numbers in the national economy, ALJ Richter concluded he was "not disabled" as defined by 20 C.F.R. § 404.1520(g). (AR 465).

## IV.   Discussion

In his Motion, Mr. Ortega presents three arguments. *See* (Doc. 27 at 9-19). First, he contends ALJ Richter failed to properly "evaluate and incorporate" Dr. Bijpuria's opinion regarding handling, fingering, and feeling bilaterally, as instructed by Judge Khalsa, and instead "cop[ied] and pasted much of the language from her [own] prior decision into [her] current decision." *Id.* at 9-15. The Commissioner argues that, in her second decision, ALJ Richter "provided a more detailed finding, based on valid consideration and supported by the record[.]" (Doc. 32 at 6).

Second, Mr. Ortega contends ALJ Richter failed to conduct a function-by-function assessment of his work-related abilities in accordance with SSR 96-8p before

---

[2] ALJ Richter did not make a finding regarding Mr. Ortega's ability to communicate in English because, under SSR 20-01P, promulgated on March 9, 2020, and effective on April 27, 2020, there is "no longer [] an education category of 'inability to communicate in English.'" SSR-20-01P, 2020 WL 1285114, at *2. Rather now, a claimant is "illiterate" only if they are "unable to read or write a simple message in any language." *Id.* at *3; *see also id.* at *3 n.8.

9

determining that he could perform a limited range of light work with frequent handling, fingering, and feeling bilaterally. (Doc. 27 at 15-19). The Commissioner contends that SSR 96-8p permits "the 'function-by-function' aspect of an RFC [to] be expressed in terms of exertional categories." (Doc. 32 at 7). The Commissioner argues ALJ Richter satisfied the rule's requirement by finding that Mr. Ortega could perform light work and further "ma[d]e specific findings regarding his work-related abilities, including postural and manipulative limitations." *Id.*

Third, Mr. Ortega argues that the hearing transcript is incomplete, due to the "twenty-eight [] instances during which portions of both questions and responses were indicated as '(INAUDIBLE)[,]'" preventing judicial review. (Doc. 27 at 19-21). The Commissioner acknowledges that several parts of the hearing were deemed inaudible but maintains that the hearing was largely duplicative of the first hearing, the overall transcript nevertheless remains clear, and the inaudible parts of the transcript do not prevent judicial review. (Doc. 32 at 9-10).

    *A.    Dr. Bijpuria's Opinion Regarding Mr. Ortega's Manipulation Limitations*

Mr. Ortega argues that despite Judge Khalsa's decision remanding this matter for a proper evaluation of Dr. Bijpuria's opinion, ALJ Richter failed to abide by Judge Khalsa's implied mandate to conduct such an evaluation. (Doc. 27 at 13-15). In particular, Mr. Ortega contends that ALJ Richter failed to sufficiently address the evidence that was consistent with Dr. Bijpuria's findings and the evidence of Mr. Ortega's daily activities. *Id.* at 14. The Commissioner contends that ALJ Richter did properly evaluate Dr. Bijpuria's opinion, "provid[ing] a more detailed finding[.]" (Doc. 32 at 6). The Commissioner argues that Mr. Ortega does not truly dispute the adequacy of ALJ Richter's evaluation of Dr. Bijpuria's opinion, but rather simply "believes that [ALJ

10

Richter] should have adopted Dr. Bijpuria's restriction of only occasional handling with the right upper extremity." *Id*.

        i.        *ALJ Richter's First Evaluation of Dr. Bijpuria's Opinion*

Dr. Bijpuria examined Mr. Ortega on July 8, 2015, following a prior examination by state agency physician Dr. Davis. *See generally* (AR 68-94). Dr. Bijpuria found, in relevant part, that Mr. Ortega's gross manipulation (i.e., ability to handle) in his right upper extremity was "limited to occasionally" due to carpal tunnel syndrome and arthropathy. (AR 89). In her first decision, issued on December 8, 2017, ALJ Richter gave this opinion "some weight," finding it to be unsupported by the record. (AR 24). ALJ Richter elaborated:

> By April 2017, the claimant reported little or no symptoms in his hands and wrists, and he was working on a car and performing yard work at that time. Additionally, he was operating a motorcycle and exercising at times after the alleged onset of disability. Such activities do not support that manipulative limitation.

(AR 24).

On review, Judge Khalsa identified two overarching errors with ALJ Richter's explanation. *See Ortega*, 1:18-cv-1092 KK (Doc. 23 at 19). First, Judge Khalsa found that ALJ Richter had failed to properly account for several key pieces of evidence in the record that seem to support Dr. Bijpuria's opinion. *Id.* at 12-13. That evidence included, among other things, years of treatment records for Mr. Ortega's right hand problems, x-rays taken in 2011 showing "fairly advanced joint space narrowing at the third MCP joint," an MRI taken in 2014 showing a "probable case of ulnar abutment syndrome," a nerve conduction study from 2014 that "was positive for mild carpal tunnel syndrome bilateral[,]" Dr. Patton's diagnosis of right wrist ulnar impaction syndrome, Dr. Steier's

diagnosis of osteoarthritis of the right hand and wrist, treatment records from Mr. Ortega's seven physical therapy sessions beginning in 2017, injections Mr. Ortega received in his right hand, his pain medication, and his use of wrist splints. *Id.*

Second, Judge Khalsa found that, in citing Mr. Ortega's daily activities quoted above as inconsistent with a limitation to occasional handling, ALJ Richter had cherrypicked portions of the record that supported her position and taken the evidence out of context. *See id.* at 14-18. Judge Khalsa concluded that, because ALJ Richter "failed to address numerous pieces of evidence—both objective medical evidence and other evidence—probative of Mr. Ortega's claimed limitations in his ability to handle[,] . . . coupled with the inadequacy of the reasons proffered . . . for discounting Dr. Bijpuria's opinion," reversal and remand was required. *Id.* at 19.

    *ii.*    *ALJ Richter's Second Evaluation of Dr. Bijpuria's Opinion*

At issue here is ALJ Richter's second evaluation of Dr. Bijpuria's opinion, following Judge Khalsa's decision. "[O]n remand from a court, [an administrative agency must] conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (internal quotations and citations omitted). This mandate rule is a corollary of the law-of-the-case doctrine and it requires a court to "comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001). The mandate rule may also apply to courts and administrative agencies. *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1145 (10th Cir. 2011). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial

review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).

The Court agrees with Mr. Ortega that ALJ Richter "copy and pasted" her first evaluation of Dr. Bijpuria's opinion into her second evaluation. ALJ Richter did include several new reasons for discounting Dr. Bijpuria's opinion, including the following:

> I give only some weight to [Dr. Bijpuria's] opinion because it is internally inconsistent and not supported by treatment notes. The evidence of record does not support finding occasional gross manipulation with the right upper extremity. Dr. Bjipuria [sic] did not personally examine the claimant, and does not cite to any specific objective findings in the medical record that support limiting the claimant to occasional manipulative activities. On the contrary, Dr. Bjipuria [sic] notes that the claimant's allegations are only partially credible and not supported by the reported functioning, the medical record, or objective findings. Further, Dr. Bijpuria cites to evidence showing that the claimant is capable of light-to-moderate activity and is able to perform household chores, clean, do laundry, make small repairs, and grocery shop. Accordingly, the limit to occasional manipulative activities is not explained in this opinion.

(AR 460) (internal citations omitted). However, even this new portion of her evaluation fails to rectify the errors Judge Khalsa identified in her decision. *See* (AR 460).

In the new portion of her evaluation, ALJ Richter states that Dr. Bijpuria's opinion is not supported by treatment notes, and then she fails to address the very treatment records related to Mr. Ortega's right hand problems from September 2011, December 2013, March 2014, April 2016, November 2016, and April 2017, which Judge Khalsa noted. *Cf. Ortega*, 1:18-cv-1092 KK (Doc. 23 at 12) *and* (AR 460). She fails to address the treatment notes from Mr. Ortega's seven physical therapy sessions for his hand pain. *Cf. Ortega*, 1:18-cv-1092 KK (Doc. 23 at 13) *and* (AR 460). More to the point, ALJ Richter fails to explain whether and why she has ignored these treatment records, which appear consistent with Dr. Bijpuria's opinion that Mr. Ortega is limited to occasional gross manipulation with the right upper extremity.

13

Further, ALJ Richter opines that Dr. Bijpuria's finding of occasional gross manipulation is not supported by the evidence in the record. Judge Khalsa identified several pieces of evidence in the record, including x-rays, MRIs, studies, and diagnoses by Drs. Patton and Steier, which seemed to support Dr. Bijpuria's opinion, but ALJ Richter does not adequately address that evidence. *Cf. Ortega*, 1:18-cv-1092 KK (Doc. 23 at 12-13) *and* (AR 460). That is, she fails to explain why this evidence does not support Dr. Bijpuria's opinion or why she has discounted this evidence.

In a strikingly similar case, *Parraz v. Saul*, 2:19-cv-904 LF, 2021 WL 1177106 (D.N.M. March 29, 2021), United States Magistrate Judge Laura Fashing considered whether, on remand from Judge Khalsa, ALJ Richter had satisfactorily addressed the errors Judge Khalsa identified with ALJ Richter's discounting of a doctor's opinion. *Id.* at *3-5. There, Judge Fashing found that "nearly all of ALJ Richter's discussion of [the doctor's] opinion was borrowed wholesale from her prior decision[,]" and that she had "simply reiterated verbatim the precise reasons that the Court previously found were not supported by substantial evidence." *Id.* at *4, 6. Judge Fashing concluded that ALJ Richter had violated the mandate rule, reversed her decision, and remanded the matter on the recommendation that it be heard before a different ALJ. *Id.* at *8-9.

Likewise, here, the Court finds that ALJ Richter's failure to consider the evidence discussed in Judge Khalsa's decision violates the mandate rule. *See Grigsby*, 294 F.3d at 1218. Accordingly, the Court will remand this matter for an ALJ to properly assess Dr. Bijpuria's opinion that Mr. Ortega is limited to occasional gross manipulation with the right upper extremity. *See Sullivan*, 490 U.S. at 886 (violation of mandate rule is "itself legal error, subject to reversal on further judicial review"). The Court will not address Mr.

14

Ortega's remaining arguments. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised . . . because they may be affected by the ALJ's treatment of this case on remand.").

      B.      *Assignment of a Different ALJ on Remand*

Finally, the Court must consider Mr. Ortega's request that the Court remand this matter for rehearing before a different ALJ. (Doc. 27 at 22). The Tenth Circuit has stated, in an unpublished decision, that it would direct assignment of a social security case to a different ALJ on remand "only in the most unusual and exceptional circumstances." *Miranda v. Barnhart*, 205 F. App'x 638, 644 (10th Cir. 2005) (internal quotations omitted). Courts in this District have done so on a number of occasions. *See, e.g., Parraz*, 2021 WL 1177106, at *8 (recommending "that the Commissioner assign this case to a different ALJ on remand); *Guthrie v. Barnhart*, 2:3-cv-1399 KBM, 2004 WL 7337620, at *5 (D.N.M. Aug. 12, 2004) (recommending "that the Commissioner consider assigning this matter to a different ALJ upon remand to take a fresh look at the matter").

Mr. Ortega has not alleged any bias here. However, the Court does find that ALJ Richter's 2020 decision already once failed to address the errors identified by Judge Khalsa. Consequently, in light of the time Mr. Ortega's case has been pending, the Court concludes that, rather than have the same ALJ review this matter for a third time, review by another ALJ would be beneficial. **The Court therefore recommends that the Commissioner assign this matter to a different ALJ on remand.**

## V.     Conclusion

For the foregoing reasons, the Court finds ALJ Richter failed to properly assess Dr. Bijpuria's opinion in accordance with Judge Khalsa's prior decision, which warrants reversal and remand.

**IT IS THEREFORE ORDERED** that Mr. Ortega's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 27), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE